UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| ANTHONY STORY,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | 3:23-CV-03001-RAL<br><br><br>OPINION AND ORDER GRANTING<br>GOVERNMENT'S MOTION TO DISMISS |

A jury found Anthony Story guilty of possession with intent to distribute methamphetamine. United States v. Story, 20-CR-30088, Doc. 74.[1] Story appealed his conviction, which the United States Court of Appeals for the Eighth Circuit affirmed. United States v. Story, No. 21-2847, 2022 WL 1468782, at *1 (8th Cir. May 10, 2022) (per curium). Story now moves to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, Story v. United States, 23-CV-3001, Doc. 1,[2] alleging ineffective assistance of counsel. The Government moves to dismiss Story's petition for failure to state a claim. CIV Doc. 27. For the reasons explained below, this Court grants the Government's motion and denies Story's § 2255 motion.

---

[1] Citations to Story's criminal case hereafter will be "CR Doc." followed by the document number from the Case Management/Electronic Case Filing (CM/ECF) system.
[2] Citations to pleadings from this case, 23-CV-3001, in which this Opinion and Order is being entered, will be "CIV Doc." followed by the CM/ECF document number.

1

I.      **Factual Background**

The evidence at trial established that in August 2019, Story possessed and shared methamphetamine and intended to distribute it. CR Doc. 74; see also CR Doc. 102 at 38. On August 14, 2019, Sergeant Jeremy Reade of the Cheyenne River Sioux Tribe Law Enforcement Service went to a camper in Eagle Butte seeking to arrest N.D.[3] on a federal warrant. CR Doc. 102 at 15, 17, 20. N.D. and her two year old came out of the camper after a delay and N.D. closed the door behind her. Id. at 46. When asked who else was in the camper, N.D. said her cousin was. Id. at 20. Sergeant Reeder received consent from the owner of the camper to enter and search the camper, locating Story in it. See id. Story appeared to be sleeping with a "hollowed-out" lightbulb and a multicolored bag nearby. Id. at 20–22, 32. Sergeant Reede testified that he was able to see into the multicolored bag and identified "plastic packaging and baggies . . . [with] a small amount of crystal at that time." Id. at 21. He searched the bag and found a digital scale, baggies, and over 37 grams of methamphetamine. Id. at 21–22, 77. Sergeant Reede testified that a "typical personal use amount is around .2 grams or .5 grams, up to a [whole] gram," and that 37 grams is not a personal use amount. Id. at 38. He explained that the "hollowed-out" lightbulb could be used to smoke methamphetamine, and that digital scales and baggies are used in drug trafficking. Id. at 32, 38.   Plastic bags are typically utilized for "seller amounts"–individually packaged methamphetamine. Id. at 39. Story's DNA was found on the plastic bags containing the methamphetamine. Id. at 55, 65, 127, 133.

The Government called N.D., who testified at length about Story's methamphetamine distribution activities and was cross-examined extensively about her cooperation agreement. CR Doc. 102 at 84–85, 87, 89–93, 95–96, 100–117. She estimated that she purchased a "couple . . .

---

[3] This Court uses initials of the cooperating witnesses in this opinion and order.

quarter of a gram" bags of methamphetamine from Story and sold roughly one gram of methamphetamine to others. Id. at 90, 92–93. N.D. affirmed that Story supplied her with the methamphetamine she sold and that they had collectively used approximately half a gram of methamphetamine together. Id. at 87, 93. She testified that Story stored his digital scale and his narcotics in a bag and that an individual earlier had stopped by the camper to obtain methamphetamine from Story. Id. at 88–89, 91, 95. Story did not live in the camper, but stayed there overnight after a disagreement with his girlfriend that is explained later in this opinion. Id. at 88, 90.

In sum, N.D. and Sergeant Reede's testimony provided evidence that Story was distributing methamphetamine, which was bolstered by the quantity of methamphetamine and drug paraphernalia found in Story's possession, as well as the drug sales that occurred between Story and N.D. Id. at 38, 93. The jury found Story guilty of possession of a controlled substance with intent to distribute and this Court sentenced him to 63 months' imprisonment. CR Doc. 74; CR Doc. 96 at 2.

Story argued on appeal that the evidence found in the camper should have been suppressed and that the evidence presented at trial was insufficient to sustain his conviction. Brief for Appellant, at 9–20, United States v. Story, (No. 21-2847), 2021 WL 6101462, at *1. The Eighth Circuit affirmed Story's conviction, finding that the facts presented during trial were sufficient for a jury to have reasonably concluded that the drugs belonged to Story. Story, 2022 WL 1468782. The police discovering Story asleep next to a bag of drugs, the nearby hollowed-out light bulb, the DNA found on the plastic bags, N.D.'s testimony, the digital scale, and over 37 grams of methamphetamine in Story's possession sufficiently supported the guilty verdict for possession with the intent to distribute methamphetamine. Id. at *1–2.

## II. Discussion

### A. Story's Claims

This Court must construe Story's petition broadly. Sappington v. United States, 523 F.2d 858, 860 (8th Cir. 1975) (per curiam). Story raises an ineffective assistance of counsel claim and challenges the sufficiency of the evidence. See CIV Doc. 1. Because Story claims ineffective assistance of counsel, this Court ordered that he choose between waiving his attorney/client privilege or having the ineffective assistance claim struck. CIV Doc. 7. Story waived the attorney/client privilege, CIV Doc. 16, and Story's prior attorneys, Assistant Federal Public Defenders Randall Turner and Amanda Work, submitted affidavits. CIV Docs. 22, 23.

The Sixth Amendment to the United States Constitution guarantees the right to effective assistance of counsel in criminal prosecutions. U.S. Const. amend. VI; see also Lafler v. Cooper, 566 U.S. 156, 165 (2012). To establish a claim of ineffective assistance of counsel, the petitioner must show both that his counsel's performance was deficient, and that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To meet this two-pronged standard, the petitioner must show that "(1) his counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different." United States v. Ledezma–Rodriguez, 423 F.3d 830, 836 (8th Cir. 2005).

The first part of the Strickland test requires a movant to show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [to] the defendant by the Sixth Amendment." Williams v. United States, 452 F.3d 1009, 1013 (8th Cir. 2006) (citations omitted). The petitioner must "overcom[e] the strong presumption that defense counsel's representation fell

4

'within the wide range of reasonable professional assistance.'" Delgado v. United States, 162 F.3d 981, 982 (8th Cir. 1998) (quoting Strickland, 466 U.S. at 689).

"The second part of the Strickland test requires that the movant show that he was prejudiced by counsel's error . . . ." Williams, 452 F.3d at 1013. This means proving that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. (citation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. (quoting Strickland, 466 U.S. at 694). "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." Ford v. United States, 917 F.3d 1015, 1021 (8th Cir. 2019) (citation omitted).

"Because the defendant must satisfy both prongs of the Strickland test to succeed on an ineffective-assistance claim, a court may decide such a claim by addressing either prong." Id. "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697.

### B. Ineffective Assistance of Counsel Arguments

#### 1. Failure to Impeach N.D.'s testimony.

Story alleges that his attorneys were ineffective by failing to impeach N.D. with evidence that Story was in prison in 2009 to rebut her allegation that he sold her drugs that year. CIV Doc. 1 at 5–7. Turner's affidavit explains that that the defense received a report in discovery that N.D. disclosed that Story sold or possessed drugs in the summer of 2009. CIV Doc. 23 ¶ 7. Because Story was in federal custody in the summer of 2009, his attorneys subpoenaed the federal clerk so that they could impeach N.D. if she testified at trial that Story was dealing drugs that summer. Id.

¶ 8. The problem with Story's ineffective assistance claim is that N.D. never testified that Story sold drugs in 2009.

Indeed, the trial transcript makes no reference to a 2009 drug transaction involving N.D. and Story. See generally CR Doc. 102 at 81–121. Rather, N.D. testified about the events leading up to Story's arrest on August 14, 2019. Id. at 85–92. On August 13, 2019, N.D. and Story smoked methamphetamine in the camper. Id. at 85–86. Thereafter, N.D. observed an altercation between Story and his girlfriend which resulted in Story's belongings being thrown out of his girlfriend's vehicle. Id. at 87–88. While assisting Story with recovering his belongings, N.D. stated that Story was worried about finding a small bag which contained narcotics and drug paraphernalia. Id. at 88–89. N.D. testified that an individual had stopped by to discuss a methamphetamine transaction with Story, and that N.D. personally purchased a couple of quarter-gram bags from Story. Id. at 90–91. N.D. sold some of the methamphetamine she obtained from Story so that she could buy more for herself. Id. at 93. On cross-examination, defense counsel Randy Turner questioned N.D. extensively regarding her addiction to methamphetamine and its effects on N.D.'s memory, prior bond violations for using methamphetamine, benefits received for pleading guilty, possible violation of N.D.'s plea agreement, and N.D.'s credibility among other things. Id. at 94-118.

Story cannot meet Strickland's first prong of showing the representation fell below an objective standard of reasonableness. Strickland, 466 U.S. at 487. The Eighth Circuit has found "constitutionally deficient performance of trial counsel based on ineffective cross-examination where counsel allowed inadmissible devastating evidence before the jury or when counsel failed to cross-examine a witness who made grossly inconsistent prior statements." Ford, 917 F.3d at 1023 (holding that counsel declining to cross examine a witness was reasonable). The record does not support a conclusion that counsel was constitutionally deficient. First, Turner did challenge

N.D.'s credibility on cross-examination, asking about N.D.'s cooperation, future and past sentence reductions, the state of N.D.'s memory due to drug use, N.D.'s violation of bond conditions, and the indictment filed against N.D. See CR Doc. 102 at 95–96, 102, 105–06, 108–16. Turner's cross examination suggested to the jury that N.D. had a motive to fabricate statements on the stand. Id. Second, counsel reasonably investigated Story's prior incarceration in anticipation of N.D.'s testimony regarding a 2009 drug transaction between N.D. and Story. CIV Doc. 22 at 3–4; CIV Doc. 23 at 3. Third, Turner and Work had the "professional discretion to determine the strategic value" of raising Story's prior incarceration for impeachment. Ford., 917 F.3d at 1023. Both Turner and Work explained in their affidavits that presenting evidence of Story's prior term of imprisonment was not necessary because N.D. did not testify to a 2009 incident. CIV Doc. 22 at 3; Doc. 23 at 3–5. Counsel made a strategic decision *not* to discuss Story's prior term of imprisonment and alleged drug dealing because of the substantial risk of prejudicing Story. Id. Because such "strategic choices . . . are virtually unchallengeable[,]" this Court cannot conclude that counsel acted unreasonably in declining to cross-examine N.D. about Story's prior term of imprisonment. Strickland, 466 U.S. at 689–90 ("[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (cleaned up and citation omitted)); Williams, 452 F.3d at 1013 (asserting that Courts are not to "second-guess" trial strategy).

The second part of the Strickland test requires Story to show that counsel's error prejudiced him. Williams, 452 F.3d at 1013. This means proving that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. (cleaned up and citation omitted). Contrary to Story's claims, the evidence of the 2009

incarceration would not have been relevant to support or disclaim any evidence offered against or in support of Story.

Turner challenged N.D.'s credibility effectively, and discussing Story's 2009 conviction would not have added anything to the cross-examination. Indeed, doing so risked letting the jury infer that Story had previously been incarcerated on drug charges. The record reflects Turner's cross-examination of N.D. was effective, and no prejudice to Story resulted from how that cross examination unfolded. See CR Doc. 102 at 95–96, 116–17. Story fails to show "a reasonable probability" that the jury would have returned with a different verdict had counsel impeached N.D. with his 2009 imprisonment. See Williams, 452 F.3d at 1013.

### 2. Lesser Offense Claim

Story asserted in his petition that "the evidence recovered serves to reflect the conduct and/or activity associated with 'use' rather than that of distribution." CIV Doc. 1 at 5. Turner and Work replied to this assertion in their affidavits, stating that while Story agreed to propose an instruction on the lesser included offense of possession, he would not allow counsel to argue in favor of this lesser included offense. CIV Doc. 22 ¶ 9; Doc. 23 ¶ 12. Story's reply brief interprets counsels' statements as asserting that he told them not to use his 2009 imprisonment to impeach N.D. CIV Doc. 31 at 2–3. He claims in his reply brief that he never authorized counsel to "abandon sound defensive strategy" and that counsel never discussed the potential of seeking a conviction for simple possession of methamphetamine.

Whatever counsel told Story about a lesser included offense, Story's § 2255 petition simply does not state a claim that counsel was ineffective by failing to argue that he was guilty only of possession. See CIV Doc. 1. And such a claim would fail even if Story had raised it, because he could not show a reasonable probability of a different result had counsel argued for the lesser

included offense of mere possession. First, the final jury instructions gave the jury the option of finding Story guilty of mere possession even though counsel didn't ask them to do so. Instruction seven advised the jury in pertinent part that:

> If your verdict on the offense charged in the indictment is not guilty, or if, after all reasonable efforts, you are unable to reach a verdict on the offense charged in the indictment, you should record that decision on the verdict form and go on to *consider whether the defendant is guilty of the crime of simple possession of a controlled substance under this instruction.*

CR Doc. 70 at 8. (emphasis added). The instruction then explained the elements of simple possession. Id. Second, there was more than sufficient evidence that Story intended to distribute the methamphetamine given the large quantity of drugs, Sergeant Reede's testimony that there was more methamphetamine than Story could use personally, the digital scale and baggies, and N.D.'s testimony that Story sold her and another person methamphetamine the previous day. Story cannot show a reasonable probability of a different result under these circumstances.

### C. Sufficiency of the Evidence Argument

Story's § 2255 motion challenges the sufficiency of the evidence. CIV Doc. 1 at 5–6. The Government argues that this claim must be dismissed because Story already raised it on direct appeal. Prisoners typically cannot use § 2255 to relitigate claims that were raised and decided on direct appeal. See Sun Bear v. United States, 644 F.3d 700, 702 (8th Cir.2011) (en banc). The "rare exception," id., to this rule include certain sorts of changes in law, Davis v. United States, 417 U.S. 333, 346-347 (1974); English v. United States, 998 F.2d 609, 612-13 (8th Cir.1993), or when the prisoner produces "convincing new evidence of actual innocence," United States v. Wiley, 245 F.3d 750, 752 (8th Cir. 2001). Story challenged the sufficiency of the evidence on

9

direct appeal and lost. Because he does not qualify for any exception to the relitigation rule, his claim fails.

### D. Certificate of Appealability

A prisoner is entitled to an evidentiary hearing on a § 2255 motion unless the motion, files, and records of the case conclusively show that the prisoner is not entitled to relief. 28 U.S.C. § 2255; Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995). A § 2255 motion can thus be dismissed without a hearing if (1) the prisoner's allegations, accepted as true, would not entitle the prisoner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact. Engelen, 68 F.3d at 240. For the reasons explained above, the motion, files, and records in this case conclusively show that Story is not entitled to relief on either his independent claims or his ineffective-assistance-of-counsel claims.

When, as here, a district court denies a § 2255 motion, the movant may not appeal without a certificate of appealability. District courts cannot issue a certificate of appealability unless the movant makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A "substantial showing" means a showing that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also id. (explaining that the question when a district court denies a habeas petition on procedural grounds is whether "jurists of reason would find" the district court's procedural ruling debatable). This Court declines to issue a certificate of appealability because Story has neither made a substantial showing of the denial of a constitutional right nor shown that the issues he raises are debatable.

### III. Conclusion

For the reasons stated above, it is

ORDERED that Story's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255, Doc. 1, is denied. It is further

ORDERED that the Government's Motion to Dismiss, Doc. 27, is granted. It is finally

ORDERED that no certificate of appealability will issue.

DATED this 17th day of March, 2025.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE